Gkeen, J.
delivered the opinion of the court.
The complainants in this bill claim to be the owners of the remainder in several slaves, to whom the defendant is enti- *448 tied for life.' The bill suggests the increasing age and intemperate habits of the defendant, and alleges that he threatens to remove the slaves from the jurisdiction of this court; prayer for an attachment, and that the slaves be put in the hands of a receiver, unless defendant shall give security, &c.
The complainant, Mary, is the oldest daughter of the defendant, William Espy, and claims these. negroes under the following clause of the will of James Espy, her grandfather and father of the defendant: “I give and bequeath unto my son, William Espy, 200 acres of land of the east end of that tract on Hart’s branch, &c.; also a negro girl, named Nice, about ten years old, to his wife, Cinthia, during his natural life, and at his death, to go to his oldest daughter.”
The slaves in controversy are Nice and her descendants.
The defendant resists the claim of complainant, Mary, upon the following grounds: He offers proof that he was married to Susan Luter, the mother of the complainant, about 1802, that when complainant was an infant, he detected her mother in adultery, and repudiated her from that time; that his father was always opposed to this match, and never would notice or recognize -the said Susan as his daughter-in-law, nor permit her to come into his house; that the defendant, then a young man, went to Missouri and married another woman, and brought her to his father’s house, where they lived until his death; that a few weeks before his father’s will was made, irT?811, this wife was delivered of a daughter, and that his father’s declared intention was to give the slave, Nice, to the mother of this infant for life, and then to the child; and that by the words, “oldest daughter,” in the will, fe not meant the complainant, but the oldest daughter of Cynthia, whom the testator designates as the wife of his son, William.
The only question is, whether this testimony can be admitted to explain the intention of this testator.
There is no dispute but that such evidence is admissible, when the description of the legatee in the will may apply to either of the two persons. In such case,-» there is a latent arhbiguity which may be explained by parol testimony. And *449 it is urged with much ingenuity and learning, that, in the present devise, such ambiguity exists. It is said, “oldest daughter,” in the mind of testator, was Cynthia’s infant; that the testator had lost sight of Susan Luter, the complainant’s mother; that complainant was unknown to him and could not have been in his mind; and that it is not reasonable to suppose the testator would give to Cynthia the slave during the life of his son William, and then take it away from the family, to whom it was first given, and of whom he was very fond, and give it to the daughter of a woman abandoned by his son, disliked by himself, and whose child was of questionable legitimacy.
These suggestions are very persuasive, and incline us to believe that the infant of Cynthia, with whom his son then lived as his wife, was in the mind of the testator, when the words, “oldest daughter,” were used. But this does not prove the existence of any ambiguity in the will. If evidence of this description could change the direction of a devise, there is no will whose bequest might not be changed by parol evidence.
A man devises to his son, A. B., ten thousand dollars; but it may be proved that the testator had spoken harshly of A. B., who was disobedient and ungrateful, and that his. son, E. F., had always lived with him, had been kind, attentive to his wants, and obedient; and when the will was made, the father was heard to say, he intended to make ample provision for his son, E. F., and yet no such provision was made. In such case, it might be supposed the legacy was intended for E. F., but the evidence to create that supposition would be wholly inadmissible, because there could be no ambiguity as to the person mentioned in the will.
An ambiguity is not that which may be made doubtful by extrinsic proof tending to show an intention different from that manifested in the will, but it must grow out of the difficulty of identifying the person whose name and description correspond with the terms of the will. Thus, if a testator make a devise to “William;” but there are two persons of that name — here is an ambiguity that may be explained. Of, if the devise is made to a person who is named and described, *450 but there is one person of the name, and another who may suit the description — here is an ambiguity, and'evidence may be heard to determine which was meant. But when the devise is to A. B., the son of C. D., such a person being in existence, no matter how clear it might be proved that the testator intended A. B., the son of E. F., such evidence would be inadmissible, because there could be no ambiguity as to the meaning of the words used in the will.
These suggestions are conclusive as to the construction of the will before us. The complainant is the oldest daughter of William Espy, and answers the description in the will. She has the advantage too of being the legitimate daughter; and when the word, “daughter,” is employed, the presumption of law is that a legitimate child is intended. We cannot perceive that any ambiguity existed in the case, and, therefore, we think the evidence to establish that the testator intended the bequest for the daughter of Cynthia, is inadmissible.
The decree must be affirmed.